Dover District Court
No. 7158

STATE OF NEW HAMPSHIRE v. JOSEPH BENNETT

July 30, 1976

*Warren B. Rudman,* attorney general, and *David W. Hess,* assistant attorney general *(Mr. Hess* orally), for the State.

*T. Casey Moher,* by brief and orally, for the defendant.

KENISON, C.J.   The defendant is charged with operating a motor vehicle while under the influence of intoxicating liquor. RSA 262-A:62 (Supp. 1975; Laws 1973, 528:321.) The defendant moved to dismiss the charge. After a hearing the District Court *(Calderwood,* J.) denied the motion and reserved and transferred the defendant's exceptions with the following agreed statement:

"The facts were that a State Police officer was parked off Route #108 in Madbury, a few hundred feet from the City Line of Dover.

"The defendant driving out of an entrance in Dover was observed to drive out in front of an approaching vehicle going in the same direction and allegedly the defendant did not yield the right of way to said approaching vehicle, all of which occurred within the City of Dover.

"The State Police officer drove out of the Town of Madbury into the City of Dover and stopped the defendant's vehicle, out of which apprehension evolved the complaint for driving while

under the influence. The State Police officer had not been requested by any official to act in the City of Dover.

"The agreed issues are:

"1. Was the violation observed by the State Police officer a 'crime' as this term is used in RSA 106-B:15.

"2. Did the State Police officer have probable cause to stop the defendant's motor vehicle.

"3. Was the State Police officer acting out of his jurisdiction."

The second issue is the credibility of the officer's testimony that he saw the defendant fail to yield the right of way in violation of RSA 262-A:30 and :2 (Supp. 1975). Nothing in the agreed statement suggests that the testimony is inherently improbable. The agreed facts warranted a finding and ruling that the officer had probable cause to stop the defendant.

The first and third issues require interpretation of RSA 106-B:15 which provides: "A [state] police employee *shall not act within the limits* of a town having a population of more than three thousand or *of any city,* except when he witnesses a *crime* or is in pursuit of a law violator or suspected violator, or when in search of a person wanted for a crime committed outside its limits, or when in search of a witness of such crime or when requested to act by an official of another law enforcement agency as provided under section 11, or when ordered by the governor." (Emphasis added.) *Compare* Iowa Code § 80.9 (1975); 23 Louisiana Rev. Stat. Ann. 40:1387 (1965); 8A Md. Ann. Code art. 88B, § 4 (b) (1969).

On the first issue the defendant notes that failure to yield the right of way is a violation. RSA 262-A:30 and :2 (Supp. 1975). Under the Criminal Code, "[a] violation does not constitute a crime . . . ." RSA 625:9 II (b). The defendant argues that the officer had no authority to act because he had not witnessed a "crime". This argument is answered by *State v. Miller,* 115 N.H. 662, 348 A.2d 345 (1975), which held in similar circumstances that the technical definitions of the Criminal Code would not be imported into other statutes where there was no evidence that the legislature intended to change the other statute. There is no indication that the legislature intended to restrict the jurisdiction of the State police when it created the distinction between violations and crimes in the Criminal Code. The legislature has not amended RSA 106-B:12 (Supp. 1975), which directs the State police to enforce the highway traffic laws and regulations. There-

fore, the defendant's failure to yield the right of way constituted a crime within the meaning of RSA 106-B:15, and the officer had authority to act.

Under RSA 106-B:15 a State trooper "shall not act within the limits . . . of any city" except in the circumstances listed in the statute. The defendant contends that the officer violated this provision by parking outside Dover in a place from which he could see part of the city. The statute is a compromise between two objectives. The first objective is to minimize competitive friction between law enforcement agencies and to provide for the efficient deployment of the State police. The second is to enforce the criminal law. The importance of the second objective produced the statute's long list of exceptions to its general prohibition against the State police acting in the cities and larger towns. Local police officers do not ordinarily patrol outside the entity from which they draw their authority. *See* Curtiss, *Extraterritorial Law Enforcement in New York,* 50 Cornell L.Q. 34 (1964). But the State police frequently travel through the cities and larger towns in the ordinary course of their duties. *See State v. Wax,* 83 R.I. 319, 116 A.2d 468 (1955); E. Fisher, Laws of Arrest 312 (Donigan ed. 1967). In the present case the officer parked outside the city limits where he could watch for offenses that occurred beyond the jurisdiction of the city police. He was acting outside the city. That he could also observe part of the city did not deprive him of his statutory authority to "act within the limits . . . of any city . . . when he witnesses a crime." The defendant's motion to dismiss was properly denied.

*Defendant's exceptions overruled.*

All concurred.