Julio DIAZ, Ruben Diaz, Jeffrey Duenes, Guillermo Plaza, Amilcar Rodriguez, Andre Rosado and Dalila Serrano, Administrator, Plaintiffs, Appellants,

v.

CITY OF FITCHBURG, Edward Gallant, Jr., Mark Louney, John O'Leary, Philip Kearns, John J. Murray, Dennis Banville, John Maki, Ronald L'Ecuyer, James F. Gilbert, James Gillis, Ernest Martineau, Gary Ouellette, David Daigle, Todd Deacon, Defendants, Appellees.

No. 98–1899.

United States Court of Appeals, First Circuit.

Heard March 5, 1999.

Decided May 14, 1999.

Darragh K. Kasakoff, with whom Darragh K. Kasakoff, was on brief for appellants.

Patrick J. Costello, with whom Douglas I. Louison, Regina M. Gilgun, and Merrick & Louison, were on brief for appellees.

Before STAHL, Circuit Judge,
MAGILL,* Senior Circuit Judge, and
LIPEZ, Circuit Judge.

STAHL, Circuit Judge.

Plaintiffs Julio Diaz, Ruben Diaz, Jeffrey Duenes, Guillermo Plaza, Amilcar Rodriguez, and Andre Rosado brought civil rights and common law claims for damages and equitable relief against the City of Fitchburg, Massachusetts, and several officers of the Fitchburg Police Department. They alleged, *inter alia*, that their custodial arrest for offending a city ordinance punishable only by a fine was unconstitutional and/or contrary to Massachusetts public policy. Plaintiffs appeal from the district court's *sua sponte* award of summary judgment to defendants. We affirm.

## I.

Because this is an appeal from a grant of summary judgment to defendants, we recite the facts in the light most favorable to plaintiffs. *See Aponte Matos v. Toledo Davila*, 135 F.3d 182, 185 (1st Cir.1998). Since 1993, the City of Fitchburg has had in effect an ordinance that prohibits obstruction of public passages within the city ("Ordinance"). *See* Fitchburg, Mass., Code art. III, § 132–34 (1994).[1] A viola-

tion of the Ordinance is punishable only by a $300 fine. *See id.*

On the evening of October 14, 1993, the Fitchburg Police Department and its Special Response Team ("SRT") executed a search warrant at a private residence. The SRT is a special unit of the police department comprised of officers trained to respond to high-risk situations. SRT officers dress in black uniforms and hooded masks which do not bear any identifying insignia. Perhaps because of the SRT's garb, plaintiffs refer to the team as a "paramilitary" unit.

After observing the raid and as they were leaving the scene following the search, Captain Mark Louney and Sergeant John O'Leary noticed plaintiffs congregated outside a nearby residence. The two officers stopped and ordered the group to move. Plaintiffs did not comply with this directive. Several minutes later, apparently with the understanding that plaintiffs were violating the Ordinance, Captain Louney summoned the SRT, which had returned to a nearby police station, to arrest plaintiffs. Within minutes and without a warrant, approximately ten members of the team arrived in an unmarked van and exited with guns drawn. Plaintiffs claim that they then were forced to the ground, frisked, handcuffed, and thrown face down in the van on top of one another. Plaintiffs further allege that, en route to the police station, they were threatened, punched, stepped and spit on, and subjected to racial insults.

---

* Of the Eighth Circuit, sitting by designation.

1. The statute provides in pertinent part:

   A. Obstructing highways and other public passages is prohibited within the City of Fitchburg.

   B. A person is guilty of obstructing highways and other public passages if:

   (1) Having no legal privilege to do so, he purposely or recklessly obstructs any highway or other public passage, whether alone or with others, and persists after warning by a police officer. No person shall be deemed guilty of obstructing in violation of this Article solely because of a gathering of persons to hear him speak or otherwise communicate or solely because of being a member of such a gathering; or

   (2) He refuses to obey a reasonable official request or order to remove himself from a public gathering when such request or order is made: (a) To prevent obstruction of a highway, street, or other public passage....

Plaintiffs were charged with violating the Ordinance, processed, and jailed until released on bail. Criminal complaints were filed against them. Complaints against two plaintiffs were continued without a finding to August 19, 1994, although these two plaintiffs were ordered to pay $50 in court costs. Complaints against the remaining plaintiffs were dismissed after the City failed to comply with a court order to disclose the names of the SRT members who participated in the arrest.

On September 9, 1994, plaintiffs filed a complaint in Massachusetts Superior Court. They asserted claims under 42 U.S.C. § 1983 and a number of pendent state law theories. Defendants removed the case to federal court on the basis of federal question jurisdiction. Plaintiffs then filed an amended complaint stating eight causes of action. Count II of the amended complaint, the basis of this appeal, sought a declaratory judgment that custodial arrest for a fine-only ordinance in the absence of exigent circumstances violates the United States Constitution, the Massachusetts Constitution, and Massachusetts public policy.

■ Plaintiffs moved for summary judgment with respect to Count II. The district court referred the motion to Magistrate Judge Swartwood for a report and recommendation. On September 26, 1997, the magistrate judge recommended that, *inter alia*, plaintiffs' motion for summary judgment on Count II be denied. Acting *sua sponte*, he also recommended that sum-

mary judgment be entered for defendants on Count II. On October 24, 1997, the district court adopted the report and recommendation.[2]

In December 1997, the parties consented to having Magistrate Judge Swartwood try the case and enter final judgment. *See* 28 U.S.C. § 636(c). Plaintiffs then filed a second amended complaint, which alleged that the use of a paramilitary unit to effect a custodial arrest for a fine-only ordinance in the absence of exigent circumstances is unlawful. Following the amendment to their complaint, plaintiffs never sought summary judgment or judgment as a matter of law on this new allegation.

In April 1998, a jury returned a verdict for defendants on all counts including, *inter alia*, excessive force, false arrest, false imprisonment, and assault and battery. Plaintiffs subsequently filed a motion for a new trial, which the district court denied. On June 30, 1998, Magistrate Judge Swartwood entered final judgment for defendants on all counts.

## II.

■ On appeal, plaintiffs advance one preserved argument: in the absence of exigent circumstances, a custodial arrest for an offense punishable only by a fine is, as a matter of law, violative of the Fourth Amendment, Article Fourteen of the Massachusetts Constitution, and Massachusetts public policy.[3]

---

2. The district court may grant summary judgment of its own volition where "the litigation is sufficiently advanced that both parties have had a reasonable opportunity to present any material evidence in their favor." *Bank v. International Bus. Machines Corp.*, 145 F.3d 420, 431 (1st Cir.1998) (citation omitted). The magistrate judge reasoned that a *sua sponte* grant of summary judgment in favor of defendants was appropriate because:

(1) whether the Defendants' arrest of the Plaintiffs was a *per se* violation of the Massachusetts and federal constitutions is a question of law which does not depend on the development of further facts, and (2) Plaintiffs' [Count II] does not allege a claim

that it was a violation of their constitutional rights for them to be arrested by the SRT team.

*Diaz v. City of Fitchburg*, No. 94–40157–NMG, slip op. at 14 n. 5 (D.Mass. Sep. 26, 1997) (order and report and recommendation). Plaintiffs do not challenge the lower court's decision to act *sua sponte*.

3. Plaintiffs also make a three-sentence argument that use of a paramilitary force to effect a full custodial arrest for a fine-only offense absent exigent circumstances is unconstitutional and/or a violation of Massachusetts public policy. Although plaintiffs raised this argument in their motion for summary judg-

## A. Fourth Amendment

■ Plaintiffs have framed their Fourth Amendment argument in very broad terms. As we have indicated, plaintiffs ask us to declare that a custodial arrest made in the absence of "exigent circumstances" for violation of an ordinance punishable only by a fine *always* violates the Fourth Amendment's reasonableness requirement. Yet plaintiffs have provided us with little basis for issuing so sweeping a ruling.

■ We start with fundamental principles. Where warrantless arrests for criminal offenses are concerned, the Fourth Amendment is satisfied if the arresting officer had probable cause and the arrest was "reasonable" under the totality of the circumstances. *See Tennessee v. Garner*, 471 U.S. 1, 8–9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). In determining reasonableness, the United States Supreme Court has "consistently eschewed bright-line rules," and insisted instead on an evaluation of all of the circumstances of a particular case. *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (holding that the Fourth Amendment does not inevitably require that a lawfully-seized defendant be advised of his freedom to leave before his consent to search will be recognized as voluntary) (citations omitted).

This litigation demonstrates why the Supreme Court has favored the case-by-case approach over bright-line rules. The Ordinance (the constitutionality of which is not here challenged) is violated *only after* the offender has refused a police officer's order to move along. *See supra* note 1. In other words, the Ordinance only comes into play when a person unlawfully obstructing a highway or other public passage persists in his or her violation. Thus, a Fitchburg police officer confronting a person in violation of the Ordinance has limited options: the officer may either allow the criminal obstruction to continue (perhaps issuing the offender a citation, as plaintiff's counsel suggested at oral argument) or end it by seizing the offender and removing him or her from the scene of the offense. If the officer always were obligated to allow the criminal obstruction to continue, he or she would be unable to satisfy the Ordinance's apparent purpose of assuring public convenience and safety except in exigent circumstances. Plaintiffs, however, have not even attempted to establish the contours of their proposed "exigent circumstances" exception. If the concept were understood to encompass only emergency situations, as it is understood in other contexts,[4] an officer seemingly could not clear the obstructed passage merely to ensure public convenience.

ment, the district court rejected it because it was not pleaded. *See supra* note 2. Thereafter, despite amending their complaint to assert this claim, plaintiffs declined to press it before the district court (at least in its current as-a-matter-of-law form) in either a motion for summary judgment or a motion for judgment as a matter of law. We therefore regard this claim as both unpreserved, *see Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 531 (1st Cir.1993) (stating that, "[t]o raise an issue on appeal, a litigant must generally show the issue was raised in the trial court by a proper request"), and inadequately argued on appeal, *see United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990) (holding that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

4. For example, in assessing the constitutionality of a warrantless search of a private residence, we have noted:

Exigent circumstances exist where law enforcement officers confront a compelling necessity for immediate action that would not brook the delay of obtaining a warrant. Although exigency determinations invariably are fact-intensive, exigent circumstances commonly include: (1) hot pursuit of a fleeing felon; (2) threatened destruction of evidence inside a residence before a warrant can be obtained; (3) a risk that the suspect may escape from the residence undetected; or (4) a threat, posed by a suspect, to the lives or safety of the public, the police officers, or to an occupant.

*United States v. Tibolt*, 72 F.3d 965, 969 (1st Cir.1995) (citations and internal quotation marks omitted).

This strikes us as sufficient reason to reject a *per se* rule.

Of course, there may be circumstances when it would be unreasonable to subject an offender of a fine-only ordinance to custodial arrest and interrogation.[5] Indeed, an arrest for violation of this ordinance may, in some circumstances, be unreasonable.[6] But as we have just explained, a custodial arrest for violation of a fine-only ordinance is not *inevitably* unreasonable. We therefore reject plaintiffs' Fourth Amendment claim.

## B.   State Claims

Plaintiffs additionally argue that Article Fourteen of the Massachusetts Constitution and Massachusetts public policy prohibit custodial arrests for fine-only offenses absent exigent circumstances. In support of their Article Fourteen claim, plaintiffs point to Massachusetts cases affording a more expansive sweep to Article Fourteen than the United States Supreme Court has given to the Fourth Amendment. They do not, however, direct us to any on-point Massachusetts authority.

■ In any event, we think it sufficient to observe that both federal courts and Massachusetts courts train their focus on whether the government has acted in a reasonable manner. *See* Mass. Const. part I, art. XIV ("[e]very subject has a right to be secure from all unreasonable searches, and seizures, of his person, his houses, his papers, and all his possessions"). And for the very same reasons that lead us to reject a *per se* rule under the Fourth Amendment, *see supra* at 561–562, we believe that the Massachusetts Supreme Judicial Court would reject a *per se* rule under Article Fourteen. In so ruling, we recognize that, in marginal cases, there are differences between the manner in which the federal courts and the Massachusetts courts have assessed constitutional reasonableness. We simply do not believe that this is a marginal case.

With respect to plaintiffs' somewhat cryptic public policy argument, which appears to be presented as an alternative basis for plaintiffs' proposed *per se* rule (in the event we find plaintiffs' Fourth Amendment and Article Fourteen arguments unconvincing), we think it sufficient to predict that, for reasons already stated, the Massachusetts courts would not impose such a rule absent binding constitutional or statutory authority directing them to do so. We therefore summarily reject this argument.

## III.

For the reasons set forth above, we affirm the district court's judgment in all respects.

*Affirmed.* Costs to appellees.

**5.** Some courts have concluded that custodial arrests for specific offenses are or could be unreasonable under the Fourth Amendment. *See, e.g., Pierce v. Multnomah County,* 76 F.3d 1032, 1041 (9th Cir.1996) (holding that a jury could find unconstitutional city's policy of allowing custodial arrest to verify arrestee's identification for purposes of issuing a citation for a non-arrestable offense); *Thomas v. Florida,* 614 So.2d 468, 471 (Fla.1993) (holding that a full custodial arrest for violation of a municipal ordinance regulating noncriminal conduct was unreasonable under the Fourth Amendment); *Barnett v. United States,* 525 A.2d 197, 198–99 (D.C.1987) (holding unconstitutional a full custodial arrest for the civil infraction of walking to create a hazard).

**6.** Although plaintiffs have not made the trial transcript or the jury instructions a part of the appellate record, it appears that plaintiffs were able to argue to the jury that a custodial arrest in the circumstances presented here was unreasonable. The jury rejected this claim.