Plymouth District Court
No. 99-153

THE STATE OF NEW HAMPSHIRE

v.

STEPHEN P. ENGLESBE

October 11, 2000

*Philip T. McLaughlin*, attorney general (*Janice K. Rundles*, senior assistant attorney general, on the brief, and *Stephen Fuller*, attorney, orally), for the State.

*Boyle Law Office, P.C.*, of Plymouth (*Gerard J. Boyle* on the brief and orally), for the defendant.

DALIANIS, J. The defendant, Stephen P. Englesbe, appeals his conviction for driving while intoxicated, *see* RSA 265:82 (Supp. 1999), after a bench trial in Plymouth District Court (*Samaha*, J.). The defendant contends that his conviction should be overturned because the arresting officer had no authority to arrest him. We affirm.

The following facts are undisputed. The defendant was arrested in Plymouth by a Holderness police officer who was on a routine patrol

in Plymouth. The Holderness officer was on duty in Plymouth at the request of the Plymouth police department pursuant to a mutual aid agreement between the two towns. *See* RSA 105:13 (1990). Under the mutual aid agreement, such a request extended the authority of the police officers in one town to the other town.

On appeal, the defendant argues that the Holderness officer's actions violated the provisions of RSA 105:13, which sets forth the requirements for extending the authority of police officers to neighboring towns. The defendant asserts that RSA 105:13 permits police officers to aid neighboring towns only in the event of an emergency, and that the Holderness officer was not acting in an emergency. We disagree.

"This court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole, and when the issue raised presents a new question of statutory construction, we begin our analysis with an examination of the statutory language." *Atwood v. Owens*, 142 N.H. 396, 398, 702 A.2d 333, 335 (1997) (quotation omitted).

RSA 105:13 states:

The authority of any duly authorized police officer, constable or watchman of any town shall extend to any other city or town in the state, provided that the chief law enforcement officer of the requesting town or city has executed with the chief law enforcement officer of the responding town a written agreement which sets forth the terms and conditions under which such assistance may be requested or rendered. The executed agreement shall constitute authorization for every request for assistance, and for any assistance rendered in accordance with the terms and conditions of the written agreement, regardless of whether the responding police officer, constable or watchman is named in the agreement. In an emergency situation, the ranking on-duty law enforcement official of a town or city is authorized to make an oral request for assistance to the ranking on-duty law enforcement official in the responding town, subject to the terms and conditions of such written agreement, and the authority of the responding police officer, constable or watchman shall extend to the requesting town. The written agreement shall remain in full force and effect until terminated by the mutual consent of the chief law enforcement officers of each town or city, or until 10 days after the chief law enforcement officer of one town

or city has received notification from the chief law enforcement officer of the other town or city of his intention to terminate.

■ The plain language of the statute conditions the extension of police authority on a written agreement "which sets forth the terms and conditions under which such assistance may be requested or rendered." *Id.* The statute contains no other express limitation on the extension of police authority. Nowhere does the statute state that its provisions are in effect only during emergencies or that the chief law enforcement officers of towns may enter into mutual aid agreements only during emergencies. "[W]e can neither ignore the plain language of the legislature nor add words which the lawmakers did not see fit to include." *Brewster Academy v. Town of Wolfeboro,* 142 N.H. 382, 385, 701 A.2d 1240, 1242 (1997) (quotation omitted). If the legislature intended to limit the circumstances under which towns could agree to provide mutual aid, it could easily have drafted the statute to do so. *Cf.* RSA 106-C:2 (1990) (permitting the provision of mutual aid by law or ordinance "during, and *only* during, periods of emergency" (emphasis added)).

■ We cannot examine the phrase "in an emergency situation" in isolation, as the defendant urges. Instead, we must examine it in the context of the whole statute. *N.H. Div. of Human Services v. Hahn,* 133 N.H. 776, 778, 584 A.2d 775, 776 (1990). Viewing RSA 105:13 as a whole, we find no limitation on the mutual aid agreements into which towns may enter. The third sentence of the statute, beginning with the phrase "in an emergency situation," merely makes clear that a prior mutual aid agreement may be invoked by oral request in an emergency. Therefore, we hold that RSA 105:13 does not condition the provision of mutual aid on an emergency, but rather grants individual police departments the discretion to enter into and define the terms and conditions of their mutual aid agreements.

*Affirmed.*

BRODERICK and NADEAU, JJ., concurred; GROFF and MANGONES, JJ., superior court justices, specially assigned under RSA 490:3, concurred.